Shooting Sports Foundation against New Jersey. Mr. Rowan. Good morning your honors and may it please the court. Matthew Rowan on behalf of NSSF. I'm gonna endeavor to save two minutes for rebuttal. Granted. Thank you. This case has a somewhat tortuous history but the issues now on appeal are straightforward. In light of the Attorney General's concession in his brief that the younger doctrine cannot apply to preclude NSSF. Counsel can I ask you to speak up just a little bit. Sure. So in light of the Attorney General's concession in his brief that the younger doctrine cannot apply to bar NSSF from asserting its federal constitutional claims in federal court on behalf of its members other than Glock. The single question this court needs to answer on appeal is whether NSSF has standing to sue in federal court on behalf of its members other than Glock. Now the case becomes easy if Glock stays as a member but you're saying you're disclaiming that we should consider them in this for the purposes of what you're arguing today right. Well so I think it's even easier than that. So that's true. So we took what we think is the federalism preserving step of saying look we're a trade association suing on behalf of 10,000 plus members who have a disparate set of injuries that arise from this statute. And while you know we take issue with the sort of genesis of the Glock litigation because we don't think it was ongoing at the time that this litigation was initiated because of course it wasn't. We made the decision that look we're just gonna take that off the table. We are going to make clear that we're not asking for any relief that would enjoin interrupt or intercede that lawsuit. And we did so specifically to sort of take Younger off the table. The district courts are refused to allow us to take that off the table but it did so in a way that I read my friend's brief to agree with us was legally erroneous. And of course that's correct because if we were here on behalf of just those entities who had submitted declarations in support of our standing there would be no question about Younger's extension. And so I think that's why my friend on the other side at page 45 of their brief sort of admits forthrightly that neither Younger nor Brillhardt-Wilton which they make clear at page 55 can operate to bar NSSF from suing in federal court on behalf of its other members provided that it has standing on behalf of its other members. And on that question there's just no reasonable debate. And so we have standing here on behalf of four discrete groups of members. None of them is Glock and so I just want to tick through them. So the first group of members are retailers in New Jersey who have already spent time and money coming into the Attorney General's view of what is required to comply with this statute. And so we know what the Attorney General thinks is required to comply with the statute. Not because the statute says it, of course it doesn't, but because the Attorney General entered into a consent decree with a defendant named point-blank and this is that page. And their concerns are what? They don't want to give the notices that the state is requiring? It's not about notices, Your Honor. So the prior practice in the industry was if you're an individual who wants to buy a handgun magazine or rifle ammunition, all you have to do is prove that you're an adult. And in some circumstances you don't even need to do that. There was no concrete prohibition as there is for handgun ammunition or handguns. And of course the FBI won't perform a background check for any purchase other than a firearm. The state actually admits that that was the state of play at paragraph 16 of the point-blank complaint that's in the Joint Appendix and paragraph 17 of the Butch's complaint that's in the Joint Appendix. And what the Attorney General said at pages 684 to 685 of the Joint Appendix is here's what you need to do as an FFL to come into compliance with this new reasonable controls provision. You need to confirm that the purchaser is not a prohibited person by checking these certain forms of ID for transactions that are not covered by any pre-existing statute or regulation. And we have four members including Little Bob's Sports Shop down in Glassboro and that's a JA 314 to 315 that say they said okay this is what's now required. They say I've spent time and money training my employees to comply with the requirements that the Attorney General has told us this statute demands of us. The you know Bob's Sports Shop said that led them to lose a hundred sales between January and April 2025 and more sales that they don't know about people you know that didn't complete them so and they spent time and money training their employees to follow these practices. So that's classic Article 3 standing. They're not the only one that fits that bill. We have a declaration at JA 221 from Legacy Indoor Range, JA 272 from Woodland Park Range 2, and JA 250 from Shooter's Hardware all of whom said the same thing. They said okay we saw what the Attorney General now says is required. It's not clear on the face of the statute but it's clear based on this consent decree and so we're going to spend the time and money to come into compliance. That's classic injury and that's separate and apart from the Susan B. Anthony standard. So the page 45 you're referring to is the Silla and Charybdis line that if you want the benefits of the enforcement actually against Glock then you're trapped for you and you're saying fine we'll carve Glock out. Is that your point? Is that true? Sure right we're happy you know we've been very clear all along that you know maybe Glock and this sort of the arguments of the back half of our brief like maybe Glock could actually come into federal court and say as long as we're not seeking to enjoin Glock's own then like we want a parallel civil enforcement you know civil action in federal court but we've said like we're just gonna make this easy for the federal courts that you know we're just gonna say for purposes of that litigation we're taking off the table any sort of relief that would operate directly against it so the sort of concerns with Younger are just gone and the same is true of Brillart-Wilton and I think my friends the other side agree with that. When you say operate directly against it I mean federal courts can do things that affect state litigation right without it causing a Younger problem. Correct. So that's where you're going. Yes exactly so I mean is this court made clear in marks in a case that the Attorney General doesn't cite in their brief that sort of the normal collateral consequences aren't enough for Younger and so what we were making clear is we're not asking for an injunction that would stop that litigation right even though we think we probably could for the reasons we made clear we don't think it's a quasi civil enforcement action we don't think it was ongoing we think there is bad faith and all of that but we sort of wanted to take that off the table and yet the district court sort of anyway said I don't think this works but the district court did that based on just a fundamental misunderstanding that I think this the state is somewhat perpetuating here that our standing here is somehow based on Glock. Okay what were the other I think so you did New Jersey retailers what were the other three? So the other three so we have a group of manufacturers including some of Glock's largest competitors who have come forward and said that what they sort of want to do is they want to continue selling firearms in other states that are lawful in those states that are unlawful in New Jersey and they have reasonable fear in light of the Attorney General's lawsuit against JSD and Eagle which was the one in Pennsylvania where it was sales of firearm kits in Pennsylvania and of course against Glock too and they say based on those we have reasonable fear that you know we're gonna be sort of tagged with liability under this lawsuit the Attorney General notably hasn't said that he won't enforce it against him. We also have those who other than the enforcement actions that have been brought since the prior case that Judge Peebus authored is that the is that the big thing that now because there have been some enforcement actions or I guess six that that fear is now enhanced is that what you're saying? So I think there are a few differences between where we were the last time around and where we are now so Judge Peebus's opinion identified sort of three deficiencies that with our initial suit for standing so is at first it said NSSF's intent to act is too general at that point we just had two declarations from members who essentially said we want to continue to engage in lawful commerce and arms we're worried that this statute will be used you know to tag liability but they didn't say anything more than that we now have nearly 20 declarations making very clear here is the conduct we want to engage it. I'm happy to sort of get to the other two but very quickly there those who sell and market Glocks in New Jersey and those who manufacture sell and distribute including in New Jersey but also elsewhere similarly designed handguns that although the Attorney General says are different his own complaint against Glock makes clear that the physics of strike or fire firearms in his words naturally lend themselves to automatic performance so that's one they said our intent to act was too general then we've now made very clear exactly what the members want to engage in and two he said it was murky that was Judge Peebus's word whether the foundation's intended conduct is arguably forbidden well that's not even questionable anymore because the attorney you know for the retailers for instance told us what is required they said we didn't used to do that we're now going to spend money doing it that's classic injury for the rest it's also like at least arguably that their continued conduct is similar which is all that is required to those lawsuits that have already been filed and the third was that Judge Peebus and the court found that the threat wasn't substantial in large part because the Attorney General had not brought any enforcement actions at that point and the Attorney General disavowed bringing suits against quote-unquote lawful commerce so don't you think you have to read all three in connection that really it wasn't the insufficiency that the number of complaints that were brought the two but it was the two in light of the representations and in light of the actions and we now have greater clarity on what really was to occur so I think that's exactly right but whether you think about it sort of as unified whole or each one it doesn't matter here because all three of those things are very different now and they're very clear that we have standing there's already been injury in fact with respect to the retailers is directly traceable there's clearly sort of a substantial threat of enforcement I mean gosh since we reopened this lawsuit they have initiated another enforcement action against an NSSF member bringing in their words a marketing claim and so the idea that the threat of enforcement for our other members is not substantial I just think is belied by reality and I think that's why you know they try to squeeze out of it I guess the first case is was it you know when is it substantial enough you're writing this opinion when do you cross the line so I think two different sets right so we have first those who have already suffered injury right so they clearly have standing which means NSSF clearly is standing so you don't really need to get to the rest of them but you know I think what you would say is look in a context where the the regulated entities are you know directly regulated by this statute and the they have said exactly what conduct in which they want to engage and that conduct is arguably prescribed and that conduct is at least arguably affected with a constitutional interest which my friend has never disputed and there have been a number of enforcement actions based on similar conduct against similar parties and the state has not disavowed enforcing it against them that's enough because otherwise you really do leave regulated entities sort of in this trap and it's almost worse than the preclusion trap that Judge Mady talks about in the Smith and Wesson case because here I mean Judge Qureshi you know he ended up issuing this younger opinion which both sides agree is incorrect he recognized in granting reopening and this is that joint appendix 108 that we really suffer sort of extraordinary circumstances here given that at least one factor motivating the Third Circuit's opinion last time around was the state's representation of sort of what its intent was or wasn't and you know we obviously have a dispute about how best to read that representation but I do think that sort of given where we are now there's just no dispute that this case should proceed to the merits. So New Jersey argued that a state court defendant can evade younger by just joining an association having it bring the federal lawsuit well how do you respond to that? So so I think there are sort of two different ways to answer that I mean so one is that no if what they're asking for in the federal lawsuit is relief that would operate against the state lawsuit then it doesn't matter and so that's like the Eighth Circuit decisions on which Judge Qureshi relied right so there's Cedar Rapids right it was like the corporate sort of partner but of course that case is relevant too because the second holding of that case is that parties that did not sort of share corporate personhood were not subject to younger even though they had the same general interest and of course NSSF has the same general interest and I mean the second answer is I think there's no like you sort of look at beginnings when you're dealing with younger and if a company sort of joins a trade association after the fact I think you're gonna have a very different sort of analysis than what you have here and I think it's important just to take a step back because this case has never been about Glock I mean when we've like Glock has never filed a declaration in any version of this case and my friend on the other side sort of says well you have these like four as applied theories one of them is about like well we have five constitutional claims our bases of standing we have sort of four different bases of standing none of which is Glock and our claims sort of have you know some of them are purely facial some are facial as sort of you know facial as applied but you know it's important to sort of keep the merits in standing separate and you know we clearly have standing and I see I'm into my rebuttal time okay thank you thank you Mr. Sheehan. May it please the court Tim Sheehan for Appellee. The dispute before this court involves two narrow questions first we agree that NSSF's challenge to the Glock suit specifically is the only claim that could face a younger bar and NSSF barely disputes that Younger does block its attempt to enjoin the pending suit against Glock and even seems to disavow it this court should thus affirm the Younger holding as to the Glock suit but second as for the remaining claims this court should affirm on the ground that these other NSSF members simply fail to satisfy article three or at worst if to the extent this court thinks it's unclear whether the district court reached that issue to remand of the district court to decide that question in the first instance I welcome of course the court's questions at any time I do want to just pick up on the this younger question and was there actually an attempt to intercede with the Glock suit so I do agree with Judge Porter the thrust of your question that if a trade if a state court defendant just joins a trade association that association launches a collateral attack on its behalf that's younger bar and I don't think anyone is disputing that I guess on on our facts did that have did that happen here we do think it happened and I think the only disagreement we have here is whether they sought to intercede with the Glock suit so I hear them now saying we want to carve that out of this case I don't think that's quite what they said to the district court to be sure I mean we're butchers and point-blank and these other were they already NSF members or did they join after the after you guys sued them those other members are not those other companies are not members of NSSF as far as we know they haven't claimed them as members of course there's no public membership list so we have to go on the representation of these five non Glock enforcement actions you have brought only Glock Glock obviously is a member but the other five are not members as far as we know yes and do you disavow any intent to sue Glock sellers who happen to be members of the Sports I think we did address this in our brief that the best places page 59 where we did say that there is no substantial threat of enforcement against retailers who quote simply put Glocks on their shelves but to put this totally to rest we are categorically disclaiming enforcement against sellers who don't do nothing more than put Glocks on their store shelves so and I do want to explain why we also think that conduct is not even arguably prescribed under our statute and it helps to understand why Glocks conduct violates our statute so as we alleged Glocks conduct is egregious it knowingly designed a handgun to make one single part responsible for inhibiting automatic fire and it made that one part easily suppressed from the outside it knew this invited use as a machine gun and even itself demonstrated that capability to government officials and it maintained this design after it learned of mounting public harm from switched Glocks in New Jersey that clears the relatively high pleading bar for the claims we brought in the Glock suit including aiding and abetting which after the Smith and Wesson decision requires kind of a specific intent to bring about the result of machine gun possession and creation someone who just puts Glocks in the store shelves we don't see how those same claims work against someone who that's their only conduct is that they so that is why we've disavowed enforcement is to that sort of bare bones description of conduct what if what if they want to advertise that they have Glock firearms for sale I don't think that's any different I whether you're selling Glocks or you know advertising the fact that you sell you're not going to go after them even if they market is that correct if they are just marketing the fact that they sell the Glock pistol we don't think that is any different I do want to be clear your honor I can imagine hypos where someone who sells Glocks and also does other egregious conduct well now we seem to be getting into it though counsel I mean you've now just carved down an entire exception from your disclaimer which strikes me as similar to your representation that no one was going to be charged if all they were doing is engaging in lawful commerce and it turned out there was a whole lot of exceptions to that representation too so what what how are we to make any of this other than we're back where we started from there's a law that is going to be enforced as the Attorney General sees fit against any number of sellers who engaging in the very conduct that butchers and point-blank are engaged in and we'll wait to find out what those actions are and is it that the whole point of a pre-enforcement challenge we don't have to wait to see there's violations of the First Amendment Second Amendment cetera so your honor I want to explain the scope of this this carve out and then address your broader point about the representations on enforcement intentions so on the Glock sellers I just want to clarify you can imagine different hypos where it is someone who sells Glocks but their conduct is a little more egregious if they want to sell the g17 pistol but also put a poster next to it that explains to customers how you can use a seer to switch it and enable machine gun capability we think that is materially different from the mere conduct of selling Glocks that that is a lot more like Glocks own conduct and we think that would be prescribed conduct and faces a credible third enforcement I think the conduct is just materially different within the frame of the the liability claims that we brought in the Glock suit that's why we are not disavowing that that category of conduct we're just saying that the fact pattern that was put before this court is the mere fact that sellers sell Glocks we think that is different we don't think that's prescribed I want to come to your broader point about the enforcement representation so to be clear we did not represent to this court that we would only bring claims alleging independently unlawful conduct under section a1 of our statute instead what we said is we pledged no actions that are based solely on lawful firearms commerce specifically the kind of strict liability style lawsuits that predated placa where you sell a lot of guns a criminal did a bad thing therefore you're on the hook for all the downstream harm at the same time we where was that specific part that's mentioned sure that is ja377 and ja393 that's the Third Circuit transcript at the same time we also made clear that we would bring actions under all three prongs of our statute when warranted we stressed that an entity can be liable for its own culpable misconduct which means quote either violating the law or doing something that is a tort under quote that is also ja377 and we gave an example of conduct that might quote check the boxes on the law but it certainly seems unreasonable unquote and so we could bring an action under section a1 is on reasonableness prong that's ja444 so the only kind of action that we disclaimed is the strict liability style lawsuit and none of the suits that we've brought look anything like that specific category in four of the actions that we brought including Glock itself we alleged that the entity's own conduct violates independent state statutes to others alleged violations of our reasonable controls requirement in section a2 and those are again for that entity's own conduct and those two cases don't even involve downstream harm those were controlled by so it's just a point-of-sale violation so we don't think there's anything to this this notion that we then brought actions that we had specifically disclaimed to this court we disclaimed a very specific category to this court and the actions we brought look like that we work backwards picking up on judge matey's question you've got a statute here that under 35 a states that a gun industry member shall not by conduct quote unlawful in itself knowingly recklessly create maintain or contribute to a public nuisance that's pretty general and then in a2 talks about forbids gun industry members from recklessly creating a public nuisance through conduct unreasonable under all the circumstances so that's really expand it's about as expansive as one can get and so you're out there you're in a member of the Sports Federation you're going I have no idea what this means I'd like to have this reviewed by a court and you're saying but you don't have the standing to come into court and I'm gonna ask you the same question I the other side when is the line crossed that there is standing versus no standing yes so to be clear your honor we can easily see hypos where you do cross the line into article 3 standing I just gave this court the example of someone who sells Glocks but also promotes the switch ability on the the point-blank fact pattern that my friend on the other side mentioned we can imagine I think the problem with that fact pattern is is actually the declarants are not alleging the convict in the way that their counsel is sort of characterizing it the the declarations actually said that those members have changed their practices to come into compliance with our statute by doing basic ID checks for ammunition sales and that there's no alleged no allegation of an intent to revert to a different practice where they don't do any checks whatsoever for any ammunition sales if you did have a member who said we would like to do no checks whatsoever for any ammunition sales that is prescribed conduct that that is just the point-blank lawsuit so we would have no issue on article 3 grounds with that we would just litigate the merits of that now you're picking and choosing but I'm you're writing the opinion when do you cross the line when don't you so I think those are the two examples I mean just to be clear like we acknowledge that you can bring fact patterns that satisfy article 3 we are responding to the three fact patterns they put before this court one is the point-blank fact pattern the other two are these parties that they think are similar to Glock so just using these three categories we think the three fact patterns they put before the court don't satisfy article 3 because what they're relying on is the conduct in the Glock lawsuit or the conduct charge in the point-blank lawsuit and they simply are not engaging in alleging an intent to engage in the same or similar conduct because the conduct they're alleging is materially different it is your answer that you would essentially write an opinion similar to what was done in the prior case in 2023 or 2024 I guess I think those three fact patterns do kind of run into the same issue where the description of the conduct is just too vague that it and just is too bare-bones really to allege something that is arguably prescribed so I think the way this court could write the opinion obviously we think you should affirm the younger holding but if you're on the other side vague is a very important word because you look at the statute and you're going I don't know if it belongs to me and I'd like to find out sure and I think that is what the issue was in NSSF one and what this court said was that makes this statute less susceptible to pre-enforcement review not more when it's a standard of care that doesn't make it more amenable to pre-enforcement review especially when it's a statute that is exclusively enforceable by the Attorney General but I do want to be clear like they can come back to the district court with a new PI motion facts different declarants and there's no reason they can't do that nothing in this course opinion needs to close the door to that our point is simply that the three fact patterns that they put before this court do not clear that bar because they are relying on drawing these analogies to two other lawsuits. When is there a fact pattern in this case hypothetical from your perspective that would cross the line to their being standing? I can give you three specific examples so in the point-blank generally speaking what when when is there we're trying to come up with a a theme as to when you have standing when you don't you're saying you keep coming back to point-blank and butch and saying well they they don't but when do you what would you have to do to have standing? So to take this court's prior opinion they have to allege an intent to engage in conduct that is arguably prescribed by our statute for which a credible but they're saying I don't even know what the statute says I mean it's so broad. Right and this goes back to the the problems with the first hearing where the colloquy you keep relying on is the court asking well what do you mean by lawful commerce are you accepting and your office says well we're saying it's it's fine if it doesn't violate this law or other law and the court says yeah we're kind of confused what we're doing here I mean if you're talking about things like straw purchasers and record-keeping the office says yes that's exactly what we're talking about so we don't understand why we're here either but the problem is is what you really meant was anything that we think violates this statute which could be a host of hypotheticals can in fact and will be charged and that's what the plaintiffs said last time and reiterate now saying well now we know what they're what they're going to do they're going to pick certain conduct which doesn't fall under federal prohibitions we're not talking about the FFL registrations we're talking about new conduct that the state has considered to be impermissible how are they supposed to know what's going to fall in and what isn't other than to just keep doing what they're allowed to do under federal law and hope that's pianos and charges don't come so your honor if I can just answer that question I do think this court does not need to chart the outer boundaries of this statute and when it can be violated and not violated this court is about just the minimal boundaries I mean I think that's what we're struggling with it's not the outer boundaries it's what it's what's gonna be within it seems as though it's entirely at your discretion so I think that the minimum boundaries are there are three causes of action in our statute the first is conduct that violates separate statutes so that is a pretty clear marker if there is a separate state or federal statute that's being violated as was the case in four of the cases that we brought that that is one cause of action the second cause of action is our own is the reasonable controls requirement in the statute the reasonable controls are defined there are four specific prongs so I think industry is on notice that these are this for specific kinds of controls you need to maintain and they can just look at those controls and and then decide whether they're alleging they're in compliance with that or not the third is conduct that is unreasonable and if you look at the the four lawsuits where there's even an unreasonable in this count it's based on the same conduct that establishes independent statutory violations so I think again just to come back to the three fact patterns that are before this court they there are certainly versions of these fact patterns that they can allege that cross the line into prescribed conduct that faces a credible threat of enforcement there's the point-blank fact pattern if they actually allege that they wish to do no checks what whatsoever for ammunition sales that's prescribed conduct that's just the facts of point-blank if you are a seller of blocks that also wants to take extra steps to promote the machine gun capability to your customers that's prescribed conduct well what what would that be just so I understand well extra steps to promote the machine gun capacity yeah sure what's a machine gun first of all so I understand a machine gun what we allege in the Glock suit is that there is one part within in the internal mechanism that that blocks automatic fire and you can put in a little seer or a switch through the outside that inhibits that one piece and by doing so it allows automatic fire by holding just a single pull of the trigger so that is what makes it a machine gun in the Glock so what would be promoting that so if you are a retailer and you have the g17 on your store shelves but you also have a poster next to it or at the register you explain to your customers I want you to know that you can also use this gun as a machine gun all you have to do is get this switch they're easy to get you just what if the poster says the Glock 17 the most adaptable firearm in the industry I think that's a closer case okay so that's the problem is we're getting into like a lot of line drawing here where it seems like something innocuous like that might well still with be in the statutes of ambit and I understand the plaintiffs to be saying that's how we're not sure what we can do it's not a matter of looking at the controls and saying we know what it is we're not allowed to do we have to make a decision about it it's we're not entirely sure what's gonna fall in or down it seems like that's why you need the pre-enforcement challenge right sure and your honor I can spot you the the poster that says the most adaptable firearm I our point is simply you don't even have that here you have just the fact that they sell blocks and that is just not enough to cross the line under any of the claims of light the theories of viability in Glock lawsuit which are things like aiding and abetting machine gun possession approximately causing the the creation of machine guns I don't hear any dispute from the other side that if all you do is put blocks on the shelves you cross that that line from general awareness into a specific intent to facilitate machine gun creation so if they're relying on the Glock lawsuit itself the the line between is it prescribed or not prescribed it comes from the theories of liability in Glock and you can just look at those claims and we've been very clear that if all you do is sell the g-17 pistol that is not prescribed and we are disavowing enforcement against someone who does no more than that I see my time is expired okay thank you so I think I can bring some clarity to the confusion so first we have members who essentially are plaintiffs for these purposes who have spent money and lost sales as a result of coming into compliance those are the declarations at 314 to 315, JA 221 to 228, JA 272 to 79, JA 250 to 257 they all plainly have standing my friend on the other side actually said if you want to do the specific kinds of controls that we now only know because of the consent decree then you'd have standing that's what they have attested to have done they are not relying on the threat of a future enforcement action they're relying on the fact they've already spent time and money and lost sales with respect to manufacturers of so-called Glock clones the Attorney General also notably did not disavow enforcement against them and we have declarations from them point here we cited them in our briefs you can look to the to the declarations they all make very clear we're very worried because of course the switchability on which the Glock lawsuit depends is well known and we're very worried that the Attorney General just as they did with respect to the suit against Sig Sauer Judge Amber you asked they are an NSSF member so after we reopened this lawsuit the Attorney General initiated another enforcement action against an NSSF member this is not hypothetical the one thing they've disavowed was that member Sig Sauer yeah makes the P320 I mean so and you know so they haven't disavowed against the conduct in which our members say they are engaged in which is manufacturing firearms in other states that are lawful there including for instance the AR-15 which the Attorney General has stood up in this court and said is sufficiently akin to a machine gun that can be banned and I know you have a case on that at the en banc level but the idea that they're gonna not you know use this statute sort of as the sword of Damocles I think just sort of gets everything backwards and I mean I think to your point Judge Mady like they really do sort of have the industry in a bind what was what's the theory of the Sig Sauer enforcement action so it's it's allegedly a defect that it fires when when not pulled the trigger they also have like marketing claims and the marketing so it's not it's not a design issue is it just a defect design defect yes there are some other claims but you know there's some marketing claims in there and like the marketing allegations there are not like hey this won't happen I mean you know it's sort of similar to what you're talking about I mean the adaptability these are sort of general phrases that are very common in this industry that could get sort of an individual or a company like right in the crosshairs of this statute and I mean you know we've been at this now for four years and all we want is an opportunity to raise the constitutional challenges in federal court and section 1983 guarantees us that we plainly outstanding and we look forward on thank you